UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TRANSATLANTIC REINSURANCE COMPANY,
FAIR AMERICAN INSURANCE AND
REINSURANCE COMPANY (F/K/A PUTNAM
REINSURANCE COMPANY)

      Petitioners,

v.

NATIONAL INDEMNITY COMPANY

      Respondent.
----------------------------------------------------------------x

No. 14 Civ. 2109 (ER) (DCF)

## DECLARATION OF PATRICIA TAYLOR FOX

I, Patricia Taylor Fox, submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am over 18 years of age and competent to make this declaration.

2. I am currently Deputy General Counsel, Reinsurance Legal, of AIG Property Casualty, a subsidiary of the American International Group, Inc. ("AIG"). My primary responsibility is to provide legal advice to AIG-affiliated insurance companies on reinsurance disputes. I submit this declaration in support of Defendant National Indemnity Company's ("NICO") Opposition to the Petition to Compel Arbitration filed by Transatlantic Reinsurance Company ("TRC") and Fair American Insurance and Reinsurance Company, formerly known as

1

Putnam Reinsurance Company ("Putnam"). The statements made in this declaration are based upon my personal knowledge and a review of the files in my possession.

3. As part of my duties and responsibilities, I oversee all reinsurance litigation and arbitration on behalf of AIG affiliated insurers against TRC and Putnam to collect overdue balances.

**The AIG Insurers Purchased Reinsurance From TRC And Putnam**

4. Between 1978 and 1985, at least 25 different AIG-affiliated insurers purchased reinsurance from TRC under at least 17 different excess of loss reinsurance contracts (the "AIG XOL Agreements").

5. Between 1978 and 1992, at least 11 different AIG-affiliated insurers purchased reinsurance from TRC and/or Putnam under at least 24 different pro rata reinsurance contracts (the "AIG Pro-Rata Agreements"). I will refer collectively to the AIG XOL Agreements and the AIG Pro-Rata Agreements referenced in this declaration as the "AIG-TRC Reinsurance Agreements."

6. Collectively, the AIG-TRC Reinsurance Agreements are reinsurance agreements between TRC/Putnam and the AIG Insurers.

**The Arbitration Demand Letters**

7. On March 3, 2014, I received two letters from TRC and Putnam demanding arbitration against certain AIG-affiliated insurers (collectively, the "AIG Insurers"), another AIG-affiliated company called Eaglestone Reinsurance Company ("Eaglestone"), and NICO. In these letters, TRC and Putnam purported to demand arbitration under (1) the AIG XOL Agreements, and (2) the AIG Pro-Rata Agreements.

8. Neither NICO nor Eaglestone are parties to any of the AIG-TRC Reinsurance Agreements under which TRC and Putnam purported to commence arbitration.

**The AIG Insurers Have Not Transferred Or Assigned To NICO Their Rights And Obligations Under The AIG-TRC Reinsurance Agreements**

9. The AIG Insurers have not assigned their rights or obligations under the AIG-TRC Reinsurance Agreements to NICO or any other party.

10. NICO has not "taken over," "supplanted," or been "substituted" for the AIG Insurers with respect to any of the AIG-TRC Reinsurance Agreements, as asserted in the brief submitted by TRC and Putnam in support of their Petition.

11. The AIG Insurers retain their full rights and obligations under the AIG-TRC Reinsurance Agreements vis-à-vis their policyholders and reinsurers.

12. In 2011, the AIG Insurers entered into a Loss Portfolio Transfer Reinsurance Agreement with Eaglestone, under which Eaglestone agreed to provide reinsurance to the AIG Insurers with respect to certain legacy asbestos liabilities. This transaction does not replace the AIG-TRC Reinsurance Agreements, but rather provides reinsurance protection to the AIG Insurers in addition to the AIG-TRC Reinsurance Agreements. At the same time, Eaglestone entered into a Loss Portfolio Transfer Retrocession Agreement with NICO. Under that Agreement NICO agreed to reinsure Eaglestone for certain of (but not all) the liabilities that the AIG Insurers had ceded to Eaglestone. That transaction does not replace the AIG-TRC Reinsurance Agreements either, but rather provides reinsurance protection to Eaglestone against certain liabilities of the AIG Insurers that it reinsures.

13. In 2011, the AIG Insurers also entered into an Administrative Services Agreement by which NICO agreed to provide, through its affiliate, Resolute Management Inc., certain administrative, claims handling, and reinsurance collections services to and on behalf of the AIG

Insurers. A true and correct copy of the AIG-NICO Administrative Services Agreement (without its exhibits or schedules) is attached to this declaration as Exhibit A. Among other things, Section 6.1 at p. 17 of the Administrative Services Agreement provides NICO with the authority to "administer and collect, *on behalf of and in the name of the applicable [AIG Insurer],*" amounts due to the AIG Insurers from TRC and Putnam (emphasis added). This includes the authority to "initiate Legal Proceedings *in the name of the applicable [AIG Insurer]* in those instances where such action is necessary in order *for the applicable [AIG Insurer]* to enforce or protect its rights" (emphasis added).

14. Any payments that NICO collects from TRC in the course of providing collection services to the AIG Insurers are for the AIG Insurers' direct benefit.

**The AIG Insurers, Not NICO, Are The Real Party In Interest With Respect To The AIG Insurers' Efforts To Collect From TRC Under The AIG-TRC Agreements**

15. TRC and Putnam are incorrect in their assertion that NICO is the "real party in interest" with respect to collecting funds due the AIG Insurers under the AIG-TRC Agreements. This assertion is based on a fundamental misunderstanding of the relationship between NICO and the AIG Insurers. As set forth above, NICO acts on behalf of the AIG Insurers with respect to certain asbestos claims adjustment and reinsurance collection activities. The AIG Insurers (and not Eaglestone or NICO) continue to be the cedents under the AIG-TRC Reinsurance Agreements, and they retain full rights and obligations thereunder. Regardless of who collects on behalf of the AIG Insurers (whether it is NICO, some other party, or the AIG Insurers themselves), the money that TRC and Putnam owe under the AIG-TRC Reinsurance Agreements continues to be owed to the AIG Insurers. If the AIG Insurers recover that money they continue to directly benefit and if they do not recover they continue to be directly harmed.

4

16. The reinsurance agreements involving Eaglestone and NICO do not change this outcome. NICO's reinsurance of Eaglestone in respect of the AIG Insurers' asbestos liabilities ceded to Eaglestone is capped at $3.5 billion. In the event that the AIG Insurers fail to recover collectible reinsurance proceeds related to these asbestos liabilities (such as those due and owing from TRC), the limits under both the NICO and Eaglestone agreements erode more quickly. Therefore, if the AIG Insurers do not recover amounts due and owing under the AIG-TRC Reinsurance Agreements in respect of these asbestos claims, the limits will erode unnecessarily. To the extent that the NICO and Eaglestone reinsurance agreement limits are reached, the AIG Insurers will be required, among other things, to reassume the administrative, claim handling and reinsurance collection functions currently handled by NICO on their behalf under the Administrative Services Agreement.

17. Thus, the AIG Insurers continue to be directly harmed if they fail to recover reinsurance proceeds from TRC and Putnam, and they continue to directly benefit when these reinsurance proceeds are recovered.

**The Affidavit Of Beth Levene Contains Numerous Inaccurate Statements**

18. On March 19, 2014, TRC and Putnam filed the Affidavit of Beth Levene in support of their Petition to Compel Arbitration before the Supreme Court of the State of New York in the action since removed to this Court. I have reviewed the Affidavit and believe it to be inaccurate in certain material respects.

19. First, in her affidavit, Ms. Levene states that "NICO initiated" litigation in New York state court against TRC in July 2012. Levene Aff. ¶ 15. To the extent Ms. Levene is referring to the action styled *Granite State Ins. Co. v. Transatlantic Reinsurance Co.*, Index No. 652506/2012 (Sup. Ct. N.Y. Cnty. July 19, 2012) her statement is misleading insofar as she

suggests that NICO is the plaintiff or initiated this litigation on its own behalf or on for its own direct benefit. To be clear, NICO is not a party to the *Granite State* litigation. Rather, the litigation was initiated in the name of AIG Insurers (Granite State Insurance Company, American Home Assurance Company, and National Union Fire Insurance Company of Pittsburgh, P.A.) pursuant to NICO's authority under the Administrative Services Agreement. *See* Complaint, *Granite State Ins. Co. v. Transatlantic Reinsurance Co.*, Index No. 652506/2012 (Sup. Ct. N.Y. Cnty. July 19, 2012), attached hereto as Exhibit B. As part of my duties and responsibilities, I, along with my colleague Bill Goldsmith (who reports to me), oversee the conduct of this litigation on behalf of the AIG Insurers. I attended the only substantive hearing in the case to date, which related to certain dispositive motions.

20. Second, in her affidavit, Ms. Levene states that "NICO initiated" an arbitration against TRC at the same time as the *Granite State* case discussed above. Levene Aff. ¶ 16. Again, this is misleading to the extent that Ms. Levene intends to suggest that NICO is the plaintiff or initiated this arbitration on its own behalf or for its own direct benefit. NICO is not a party to this arbitration. Rather, the arbitration was initiated in the name of certain AIG Insurers (National Union Fire Insurance Company of Pittsburgh, PA, Insurance Company of the State of Pennsylvania, and American International Underwriters) pursuant to NICO's authority under the Administrative Services Agreement. A true and correct copy of this demand letter commencing this arbitration is attached to this declaration as Exhibit C. The AIG Insurers' petition to appoint an umpire in New York Supreme Court is attached as Exhibit D, and the accompanying order of the Supreme Court appointing an umpire is attached as Exhibit E. As part of my duties and responsibilities, I, along with Mr. Goldsmith, oversee the conduct of this arbitration (and related

6

litigation) on behalf of the AIG Insurers in this arbitration. Mr. Goldsmith has participated in the substantive hearings in this arbitration.

21. Third, in her affidavit, Ms. Levene states that "NICO has controlled and directed AIG's litigation and arbitration proceedings with respect to the transferred asbestos claims." Levene Aff. ¶ 18. This is not true. Either I or another attorney within the Reinsurance Legal group of AIG Property Casualty participates with NICO in the management of the litigation and arbitration proceedings on behalf of the AIG Insurers that are parties to those proceedings. Moreover, NICO could not direct and control the litigation and arbitration proceedings referred to as suggested in the Levene Affidavit because these proceedings deal with the entire book of business ceded by the AIG Insurers to TRC under the reinsurance contracts at issue in those matters. The Administrative Services Agreement does not give NICO any authority with respect to those matters outside the scope of the Administrative Services Agreement.

22. Fourth, in her affidavit, Ms. Levene states that "[t]here has been a de facto agreement between TRC and AIG to hold all arbitrations in New York irrespective of the location designated in the treaties themselves." Levene Aff. ¶ 20. Ms. Levene further states that "AIG and TRC have repeatedly ignored the venue provisions of the Treaties." Levene Aff. ¶ 23. These statements are not true.

23. The AIG Insurers have not entered into any agreement, de facto or otherwise, to hold all arbitrations between the AIG Insurers and TRC/Putnam in New York. Rather, I and other members of my legal group have, on an ad hoc basis and giving consideration to particulars of the individual disputes and the convenience of the individuals involved, agreed to hold certain organizational meetings and/or hearings in certain arbitrations in New York, even if the treaty in question provides for arbitration in some other location. *See, e.g.*, Levene Aff. Ex. 4, Treaty 44,

7

at 5 (providing that the "arbitration shall take place in San Francisco, California, unless some other location is mutually agreed upon").

24. To the best of my knowledge and recollection, neither any of the AIG-affiliated insurers nor TRC has ever—before now—taken the position that they have a right to *require* arbitration of disputes between them in New York irrespective of a contrary forum selection clause in the particular agreement under which arbitration has been demanded.

25. My agreement on behalf of certain AIG Insurers on an ad hoc basis in specific arbitrations with TRC to hold organizational meetings or other arbitration hearings in New York from time-to-time is in no way intended by me to constitute a waiver of the right of any AIG Insurer to demand that other arbitration proceedings initiated under the same or different treaties take place in the location specified by the treaty in question.

**Pre-Existing Arbitrations Involving Certain AIG-TRC Agreements**

26. Since 2011, certain AIG-affiliated insurers have commenced at least 9 arbitrations against TRC alleging that TRC breached the relevant AIG-TRC Reinsurance Agreement by failing to pay the amounts it agreed to pay.

27. The AIG Pro Rata Arbitration Demand Letter references four AIG-TRC Reinsurance Agreements that are already the subject of ongoing arbitration proceedings.

28. TRC/Putnam Treaty Nos. 220100044, 220100146, and 220100232 are the subject of an arbitration that I initiated on behalf of AIG Insurer Lexington against TRC on December 27, 2013. A true and correct copy of my December 27, 2103 arbitration demand letter is attached to this declaration as Exhibit F.

29. TRC/Putnam Treaty Nos. 220100207 and 60400014 are the subject of an arbitration that I initiated on behalf of AIG Insurer National Union Insurance Company of

Pittsburgh PA (as successor to Landmark Insurance Company) against TRC also on December 27, 2013. A true and correct copy of my December 27, 2013 arbitration demand letter is attached to this declaration as Exhibit G.

**Review Of AIG-TRC Reinsurance Agreements**

30. After I received the AIG Pro Rata Arbitration Demand Letter and the AIG XOL Arbitration Demand Letter, I undertook to collect and review the AIG-TRC Reinsurance Agreements that are referenced in those letters.

31. Among the AIG-TRC Reinsurance Agreements that I located in our files was AIG Treaty No. 8705 (corresponding to TRC/Putnam No. 220100042) issued to AIG Insurer Landmark. A true and correct copy of the version of this contract as maintained in AIG's files is attached to this declaration as Exhibit H.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on April 3, 2014, in New York, NY.

*Patricia Taylor Fox*
Patricia Taylor Fox